1  Joyce B. Spies
2  Plaintiff, Pro Se
   16007 N. 52d Place
3  Scottsdale, AZ 85254
   spiesjb2legal@gmail.com
4  602-690-0158

5

6              IN THE UNITED STATES DISTRICT COURT

7                  FOR THE DISTRICT OF ARIZONA

8

9  **JOYCE B. SPIES**                    )
                                          )   **Case No.:**
10       **Plaintiff,**                   )
                                          )        CV 12-01020-PHX-DGC
11                                        )
    v.                                    )   **COMPLAINT**
12                                        )
13 **CITY OF SCOTTSDALE, ARIZONA,**       )
   **DAVID STANLEY, COUNTY OF**           )
14 **MARICOPA, STATE OF ARIZONA,**        )
   **JEFFREY PITTS, SUZANNE J. REED,**    )
15 **KALON METZ, and DOES 1**             )
   **THROUGH 20;**                        )
16                                        )
17                                        )
        **Defendants**                    )
18                                        )

19

20                  **JURISDICTION AND PARTIES**

21 1. This is an action for money damages brought by Plaintiff Joyce B. Spies, an
22    individual, pursuant to 42 U.S.C. §1983 and §1988, the Fourth and Fourteenth
23    Amendments to the United States Constitution and pursuant to the laws of Arizona.

24 2. Jurisdiction is based on 28 U.S.C. §1331, §1343 and on the supplemental jurisdiction
25    of this Court to entertain claims arising under state law. 28 U.S.C. §1441(a).

26 3. The claim on which this action is based arose in Scottsdale, Arizona. Venue lies in
27    this District. 28 U.S.C. §1391(b).

28 4. Plaintiff seeks recovery of damages from the CITY OF SCOTTSDALE
      (SCOTTSDALE), and DAVID STANLEY (STANLEY), COUNTY OF

MARICOPA, JEFFREY PITTS (PITTS), SUZANNE J. REED (REED), KALON METZ (METZ), and DOES 1 through 20.   STANLEY is a police officer of the Scottsdale Police Department. PITTS, REED and METZ are employees of the COUNTY OF MARICOPA, County Attorney's Office, Trial Group D.

5. The true names of Defendant DOES 1 through 10, inclusive, are now unknown to Plaintiff who therefore sues said Defendants by such fictitious names, but upon ascertaining the true identity of a DOE Defendant, Plaintiffs will substitute same, or seek leave to do so, in lieu of such fictitious name.

6. At all times mentioned in this Complaint, Defendant STANLEY was a duly appointed, qualified and acting police officer employed by the CITY OF SCOTTSDALE, a municipal corporation within the State of Arizona and at all times relevant to this matter was acting within the course and scope of such employment and agency.

7. At all times mentioned in this Complaint, PITTS, REED and METZ were duly appointed, qualified prosecuting deputy attorneys employed by the COUNTY OF MARICOPA, a municipal corporation within the State of Arizona and at all times relevant to this matter were acting within the course and scope of such employment and agency.

8. At all times mentioned in this Complaint, Defendants were acting under the color of law, that is, under the color of the Constitution, statutes, laws, charter, ordinances, rules, regulations, customs and usages of the State of Arizona, the CITY OF SCOTTSDALE, and the COUNTY OF MARICOPA.

9. Plaintiff is an individual over the age of 18. At all times herein mentioned, she was a resident in Maricopa County, Arizona.

## FACTS RELEVANT TO ALL CLAIMS

10. The events upon which this Complaint is based occurred within the Judicial District of Arizona beginning on or about Sunday, May 17, 2010 at or near 8200 E Shea Blvd. during a traffic stop by STANLEY at approximately 1:00 a.m.

11. Plaintiff, a married woman, had been working from 5:00 a.m. on May 16, 2010 at a second job with Santa Barbara Catering, as Plaintiff had fallen upon economic difficulties after her estranged husband had been unemployed for a significant period of time. Having completed a second assignment including serving wine to guests, plaintiff was extraordinarily fatigued and began to fall asleep on her way home, causing her 1991 Mazda Miata to stray between traffic lanes.

12. At approximately 1:00 a.m. STANLEY, having observed Plaintiff swaying between traffic lanes, stopped the Plaintiff. Upon his approach to the vehicle, STANLEY asked Plaintiff if she knew why he had stopped her. She confirmed that she was extremely tired after working all day and was falling asleep, unknowingly weaving between traffic lanes. STANLEY asked the Plaintiff whether she had been drinking, to which she replied that she had not. STANLEY then became very stern with Plaintiff, telling her that he could smell alcohol and accused the Plaintiff of lying to him. He again asked Plaintiff what she had been drinking. Plaintiff again denied that she had been drinking alcohol.

13. STANLEY asked Plaintiff if she was carrying a firearm as she possessed a Carry Concealed Weapons Permit; Plaintiff acknowledged that she had a handgun and pointed to the locked glove box. STANLEY then screamed at the Plaintiff telling her not to touch anything and to exit the vehicle, to which Plaintiff complied. While Plaintiff stepped to the curb STANLEY opened the passenger door of Plaintiff's vehicle and immediately confiscated the 1908 Colt Vest Pocket Automatic handgun belonging to Plaintiff.

14. As Plaintiff was standing at the curb, STANLEY suddenly and without warning or requesting permission to do so, shined his extremely powerful MAG flashlight in Plaintiff's eyes to conduct a Horizontal Gaze Nystagmus (HGN) test. Immediate pain shot through Plaintiff's head and Plaintiff squeezed her eyes closed to prevent further debilitating agony to Plaintiff's person. STANLEY then continued to yell at Plaintiff asking, "How much have you had to drink?" he then asked Plaintiff whether she was taking any medication. Plaintiff informed STANLEY that she was a Cancer patient,

and also taking prescription medication for Migraine headaches. STANLEY confirms his knowledge of Plaintiff's medical status as reported in his report #10-12241, page 2.

15. STANLEY then told Plaintiff to walk and turn. Plaintiff, recognizing that STANLEY was conducting a Field Sobriety Test (FST) refused to complete the test. Plaintiff was in excruciating pain from the onset of the Migraine headache caused by STANLEY when he suddenly and without permission administered the HGN test. STANLEY advised the Plaintiff that she would be arrested if she refused the test. He began screaming at the Plaintiff, demanding to know why she would not take the FST. STANLEY then told her that she needed to take a Breathalyzer (PBT). Plaintiff again refused.

16. By this time STANLEY was noticeably angry and demanded to know why Plaintiff refused to take the FST and PBT. Plaintiff advised STANLEY that he had already told her he was going to arrest her, and she asked for a blood test. She knew that it was common practice for SPD officers to document that a traffic stop victim had "failed" the FST to obtain probable cause for an arrest, and there were no witnesses to verify a PBT result. Plaintiff again asked to be taken for a blood draw.

17. STANLEY was now infuriated with Plaintiff, abruptly grabbed Plaintiff by the upper arm exerting so much pressure that his fingers left pattern bruises on her body; he then twisted Plaintiff's arms behind her and applied the handcuffs with such pressure that Plaintiff lost feeling in her hands.

18. In accordance with standard practice, a second patrol officer had arrived at the scene. The second officer placed the plaintiff in the back of STANLEY's patrol car. STANLEY continued to yell at Plaintiff, which was observed by the second unidentified officer. Plaintiff asked the second officer, "Why is he being such a jerk? It is obvious I have not been drinking. Why is he screaming and yelling?" The unidentified officer did not deny this treatment to the Plaintiff, but merely responded that he could not answer the Plaintiff.

19. STANLEY then without permission or authority from the Plaintiff, searched the Plaintiff's vehicle. He searched the cab of the vehicle, which contained Plaintiff's work clothes that she had been wearing earlier, including black tuxedo pants, white uniform shirt and non-slip soled shoes. Plaintiff's wine key was in fact sitting on the seat after she had removed it from her pants pocket. After searching the cab STANLEY then searched the trunk which contained Plaintiff's laptop computer, briefcase and camera. He then slammed the deck lid of Plaintiff's car with such force as to dent the metal with the heel of his hand.

20. When STANLEY returned to the patrol car where plaintiff was seated, she asked him to loosen the cuffs as they were cutting into her wrists and she had lost feeling in her hands. STANLEY replied by stating that the cuffs were not meant to be a fashion statement; he then forced his finger into one of the cuffs at the soft-tissue interior of Plaintiff's wrist. He had to use enough force to noticeably scrape several layers of skin from her wrist. He then responded "See? There is enough room to get my finger in there". STANLEY comments regarding applying the cuffs in the Police report that he did this in the narrative portion of the police report, as though to justify that he did not apply the cuffs in an extraordinarily constraining choke.

21. Plaintiff was now distraught and in pain as STANLEY began make arrangements to have the plaintiff's car towed. Plaintiff, so verbally abused by this point as to cause her to become nauseated, asked STANLEY if she could just take the PBT to prove she was not drinking, as a witness, the second officer, was now present to verify the result. STANLEY refused; he screamed that Plaintiff's refusal to take the FST was grounds to arrest her- it was too late, Plaintiff was going to be arrested and in fact had already been cuffed and detained.

22. Plaintiff asked STANLEY again, several times, in the witness of the unidentified officer, whether she could just take the PBT test; but STANLEY said there was no way after Plaintiff had refused the test that she could now complete the test. Plaintiff again asked the second officer why STANLEY had to be such a jerk. He stood and

shook his head, but would not answer. Plaintiff remained seated in the back of STANLEY's patrol car while STANLEY continued to verbally abuse her.

23. After Plaintiff's car was removed and the still unidentified officer had left the scene, STANLEY then proceeded to take Plaintiff to Scottsdale Health North for a blood draw. Plaintiff needed to use the restroom. STANLEY advised Plaintiff that she would not be permitted to use the restroom until they were done with the blood draw. Plaintiff waited until the female phlebotomist came to draw blood. As STANLEY witnessed the draw, Plaintiff informed the Phlebotomist that she was a breast cancer patient and that the draw must be made from the right arm in accordance with instructions from her Oncologist. Plaintiff modestly showed the scars to the Phlebotomist. Defendant witnessed this exchange. This was STANLEY's second notice of the Plaintiff's medical status.

24. As soon as the phlebotomist had finished the draw she left the room. Plaintiff then again asked to use the restroom. STANLEY, still apparently angry that Plaintiff refused the FST and PBT, advised the Plaintiff that she could use the restroom, but that she would need to leave the door open far enough that he could see what she was doing. Plaintiff asked for a female attendant so that she could have some privacy. STANLEY then told Plaintiff there were no female attendants and that she must leave the door open. Plaintiff proceeded to urinate while STANLEY stood at the door, where Plaintiff's reflection was plainly visible in the mirror, all to the embarrassment and humiliation of the Plaintiff.

25. Once the blood draw had been completed, Plaintiff was again handcuffed, placed in the back of STANLEY's patrol car and taken to the precinct where she was searched and booked. STANLEY had confiscated Plaintiff's handbag, which was inventoried. Plaintiff carried a small plastic bottle of Excedrin Migraine in her handbag. Within 10 minutes of Plaintiff being placed in a holding room, STANLEY returned and announced that he "had found the drugs" in the Excedrin Migraine bottle and would add drug possession charges to the DUI charges being filed.

26. Plaintiff had placed in the bottle in addition to the Excedrin Migraine pills a single Oxycodone pill which was prescribed to her for pain after two surgeries to remove the cancer. She also had two diazepam tablets and several 25mg tablets of Topiramate, and a single 20mg of Tomoxifen, all of which had been legally prescribed to the plaintiff. Plaintiff was unknowingly ignorant that prescription medication must be carried in its' original prescription container. STANLEY never asked Plaintiff whether she had prescriptions for the medication in the Excedrin Migraine bottle, he simply announced that he would be adding the charges.

27. Plaintiff was "Marandized" at the precinct upon Take-in; she immediately asked STANLEY when she would be permitted to contact her counsel. As soon as Plaintiff requested counsel STANLEY ceased any further contact with Plaintiff after telling her that she had not previously asked for counsel. She was held for several hours at which time she was released at approximately 3:45 a.m. She was provided with Arizona Traffic Ticket and Complaint 1813475, alleging the following charges: 13-3406.A1 Possession of Prescription-only drugs, 28-1381.A1, DUI – Impaired to the slightest degree, 28-1381.A2 DUI – BAC of .08% or more, and 28-729.1 Failure to drive in a single lane (x2).

### SUBSEQUENT TO ARREST

28. The following week Plaintiff attempted to recover her confiscated handgun. Plaintiff was advised by the SPD Property Department that STANLEY had not yet filed the Police Report and the firearm could not be released until such time as the report had been filed. Plaintiff followed up with the SPD Property Department multiple times, for approximately 2 months; each time Plaintiff was told that STANLEY had not released the handgun. After multiple and repeated attempts, SPD Property finally advised plaintiff that STANLEY had notified them that felony charges were being filed against Plaintiff and she could not retrieve her firearm pending the outcome of the felony charges.

29. Unknown to Plaintiff but known to STANLEY, the Crime Laboratory Section of SPD sent the report of results of the Forensic Blood Alcohol Examination to STANLEY

the following day of the arrest, dated 05/18/2010. The results confirmed 0% alcohol from either sample of the two viles, which were tested at 1:50 a.m. on 5/17/2010. It is likely and probable that STANLEY knew that Plaintiff had not been drinking prior to her release at 3:45 a.m. Yet STANLEY none the less completed and submitted the Incident/Investigation Report on 05/21/2010. STANLEY falsified his observations in the report to reflect a pseudo- FST, by stating that Plaintiff was swaying, uncoordinated, with watery eyes and flush complexion when in fact, there were no other witnesses to STANLEY's claims of Plaintiff's responses and behaviors. Moreover, Plaintiff was in pain and her eyes were not watering, in fact her eyes were so dry that she did not have enough moisture to retain her contacts and lost her left lens in the back of STANLEY's patrol car. STANLEY clearly falsified the report of his observations in an effort to justify his outrageous and malicious treatment of Plaintiff. Another drug charge was also added to his report, 13-3408.A1, Narcotic Drug Possession and use.

30. Plaintiff retained counsel to represent her in the case filed by the CITY OF SCOTTSDALE, #M-0751-TR-2010015085, Complaint # 01813475. Plaintiff's counsel obtained a copy of the BAC results which demonstrated that Plaintiff had not been drinking as STANLEY had insisted. Both of the DUI charges were dismissed on June 10, 2010.

31. After Plaintiff's counsel provided the SCOTTSDALE City attorney with copies of Plaintiff's prescriptions showing that the medication carried in Plaintiff's handbag and within another pill bottle were in fact her own legal prescriptions, the City attorney agreed to dismiss the drug charges without prejudice on October 4, 2010, pending the outcome of a toxicology report, and in exchange for a 'guilty' plea of Unsafe Lane Change. This was of course, a bogus condition of dismissal as SPD denies that any toxicology report was ordered or obtained, and SPD is only required to retain the blood draws for 90 days. It is more likely that SPD obtained the Toxicology report and determined that Plaintiff had no alcohol in her blood whatsoever, and no

1   toxicology report was ever ordered; nor would same have revealed any drugs or

2   medication in Plaintiff's system.

3  32. On November 5, 2010, Plaintiff filed timely Notice of Claim with the CITY OF

4     SCOTTSDALE. See Exhibit A. Plaintiff documented the physical and verbal abuse

5     and excessive force used by STANLEY without an apparent justifiable basis. Plaintiff

6     sought to recover the property damage to her 1991 Mazda Miata damaged by

7     STANLEY, attorney's fees and costs, and general damages. Plaintiff also sought to

8     recover her antique handgun or in the alternative to be compensated its' value, still

9     being held by SPD Property. Total damages claimed by Plaintiff were a modest

10    amount of $11,000. SCOTTSDALE did not respond to Plaintiff's Notice of Claim.

11  33. Plaintiff continued to attempt recovery of her handgun from SPD. After Plaintiff

12     demanded that SPD Property confirm what Felony charges were pending against

13     Plaintiff, when in fact none had been filed, she finally recovered her handgun on

14     December 10, 2010.

15  34. In conjunction with Plaintiff's Notice of Claim, Plaintiff filed a complaint with SPD

16     asking for investigation into the unjust treatment and harassment by STANLEY.

17     Although SPD Internal Affairs contacted Plaintiff and exchanged a few emails,

18     Plaintiff was advised that there would be no investigation as Plaintiff declined to

19     provide a recorded statement of the incident, or concede to an Examination Under

20     Oath; Plaintiff did not want to do anything to jeopardize her civil claim against

21     SCOTTSDALE and STANLEY. SPD never followed up with Plaintiff.

22  35.

### FELONY CHARGES

24  36. On February 7, 2011 the State of Arizona filed Felony Drug charges against Plaintiff

25     in apparent retaliation of her intent to seek modest compensation for her damages.

26  37. By the time the State filed new charges against the Plaintiff, she had been laid off

27     from her regular full time employment. One of Plaintiff's former colleagues,

28     recognizing Plaintiff's financial and emotional distress, sent a letter to PITTS, Deputy

      County Attorney, on March 2, 2011 providing copies of SCOTTSDALE's dismissal,

1  Plaintiff's prescriptions which had previously been provided to SCOTTSDALE,

2  indication that STANLEY conducted an unlawful search under the circumstances, and

3  asked that the charges be dismissed. PITTS responded to Plaintiff's colleague by

4  advising him that her prescriptions were too old. He refused to dismiss the charges.

5  38. Plaintiff appeared as ordered and requested the assistance of a Public Defender as

6  Plaintiff could not afford to retain counsel a second time. Her case was initially

7  assigned to EDC. Plaintiff met with her counsel and provided all of the documents

8  which had been provided to the City of Scottsdale to demonstrate that Plaintiff was

9  legally in possession of her own prescription medication. Plaintiff appeared before the

10  Magistrate at which time STANLEY appeared and testified. The State asked

11  STANLEY whether Plaintiff had advised him that the medication in her possession

12  was her own prescription medication. STANLEY denied that Plaintiff informed him

13  of her prescriptions. STANLEY was *not asked* whether he ever inquired of Plaintiff if

14  she was legally in possession of the medication, which in fact, he had not ever asked

15  Plaintiff. Plaintiff's defense attorney asked STANLEY whether he had been informed

16  that the Plaintiff was a Cancer patient. STANLEY acknowledged that Plaintiff had

17  advised him of her medical status. The Court in its' discretion determined, based on

18  STANLEY's testimony that probable cause existed and scheduled the case for

19  management conferences through EDC.

20  39. Plaintiff's appointed Defense attorney met with Plaintiff on several occasions prior to

21  required status conferences before the Court. The State made repeated offers to

22  Plaintiff to plea bargain to a lessor, non-specific Class 6 felony charge in exchange for

23  dismissal. Plaintiff refused and requested that the case be brought to trial as soon as

24  possible. Plaintiff was unwilling to allow a Felony conviction to be placed on her

25  record which would most certainly prevent her from ever obtaining gainful

26  employment for the remainder of her working life.

27  40. After it became clear to the Judge that Plaintiff would not plea bargain under any

28  circumstances and was not interested in any offers from the State, her case was

remanded to Superior Court. A new prosecuting attorney and a new defense attorney were subsequently assigned to Plaintiff's case.

41. After many phone calls and requests Plaintiff was finally able to meet with her new counsel. She again provided him all of the documentation to show that she was in possession of her own prescription medication. She requested that her counsel do everything possible to get the State to voluntarily dismiss the case against plaintiff, or at the very least reduce the charges to misdemeanor status in conjunction with A.R.S. 13-3408. Plaintiff also notified her counsel of the Notice of Claim and provided him with copies and the photographs.

42. Once the case had been remanded to Superior Court, Deputy County Attorney REED, without as much as a cursory review of the Plaintiff's case, immediately sent an identical Plea Agreement offer to Plaintiff through her counsel. Plaintiff immediately rejected the offer and insisted that her counsel research a request before the Court to dismiss her case as it was clear that she was legally in possession of her own prescription medication.

43. During the course of Discovery the State was provided for a 3rd and 4th time copies of Plaintiff's prescriptions; pictures of the actual prescription bottles, copies of portions of medical records and all other documentation requested by the State to demonstrate that she was legally in possession of her own prescription medication. Each time Plaintiff's defense counsel came back to Plaintiff and advised her that the Prosecutor was unwilling to dismiss the case as her prescriptions were "old", or that they could not reach the prescribing doctor to verify that he had in fact prescribed the medication.

44. Thereafter, Deputy Attorney KATZ requested that her counsel provide copies of Plaintiff's Notice of Claim, a document which was, or should have been readily accessible to KATZ. Without Plaintiff's authority to do so, her counsel provided these documents. Plaintiff believes KATZ' request for these documents were in an attempt to verify whether Plaintiff had timely filed the notice, and whether her claim had any validity.

45. Plaintiff continued to urge her own counsel to seek relief through the Court, but her counsel advised her that there was no course of remedy as with Civil actions. Plaintiff asked her counsel to prepare for trial. She asked her counsel to have the State identify the second officer who was present at the time of the traffic stop so that he could be interviewed and brought to testify. Each time the State ignored the requests or refused to provide this information or comply with Discovery.

46. Plaintiff urged her counsel to document his attempts to have the State comply with discovery, or to identify the authority under which they chose to prosecute the Plaintiff because her prescriptions were "old", or to challenge the validity of Plaintiff's medical records which were obtained from their original sources. KATZ then advised Plaintiff's counsel that they would 'consider' a dismissal. Plaintiff asked her counsel to notify her as soon as the State had complied with discovery demands. Nothing was ever produced.

47. As the trial date approached KATZ then falsely advised Plaintiff's counsel that he had no reason to dismiss the Felony charges as Plaintiff had already plead guilty to a another Felony charge, reckless driving. This statement was a malicious, willful and wanton attempt to get Plaintiff to plea bargain in lieu of taking her case to trial, or to prevent her from filing charges against STANLEY and SCOTTSDALE. Plaintiff reminded her counsel that she had given him a copy of the dismissal from SCOTTSDALE court showing that Plaintiff plead guilty to an Unsafe Lane Change, the only traffic citation issued against Plaintiff. KATZ repeatedly urged Plaintiff's counsel to "convince" Plaintiff that there were serious risks involved with taking her case to trial including jail time. Plaintiff advised her counsel that she was appalled at the idea that she would potentially be facing a jail sentence for carrying her own prescribed medication and disgusted that KATZ and her own counsel believed that a jury would convict Plaintiff.

48. It finally became clear to the State that Plaintiff would not plea bargain. The date of the Final Pre-trial Conference was to take place on September 15, 2011 and Trial had been scheduled for September 22, 2011. On August 23, 2011 the State filed a Motion to Dismiss "in the interest of justice". In accordance with the Rules of Civil Procedure, the deadline for the State to produce Discovery had passed. The deadline beyond which the State could no longer seek a Dismissal was within days of the State's motion.

49. Plaintiff's defense counsel advised her of the motion filed by the State, but he did not advise her that the Motion was filed *without Prejudice*. The docket, a public record, did not state that the State's motion was *without Prejudice*. Counsel further advised her that the Court had not yet signed the Order of Dismissal, therefore Plaintiff's defense counsel filed a Motion of non-objection to the State's Motion. The order was signed 09/13/2011 and the Final Pretrial Conference and Trial date were vacated.

50. As late as October 4th, 2011 the docket did not reflect a dismissal. Plaintiff was required to write the Clerk of the Court to have the docket updated. The record was modified on 10/4/2011.

51. To the best of Plaintiff's knowledge the State did nothing to prove that the Plaintiff did not have a legal right to possess her own prescription medication, or demonstrate that they had reason to believe a jury of Plaintiff's peers would find her guilty of the charges; yet the State continued to urge Plaintiff to plea to a lessor Felony charge in lieu of adjudicating the malicious charges, all to the Plaintiff's damage.

## PLAINTIFF'S SEARCH FOR EMPLOYMENT

52. As stated herein, plaintiff had been laid off from her primary employment in September 2010. Plaintiff was employed in the Insurance industry in a managerial capacity, a position that requires a fidelity bond. Replacing her position and salary with the current state of the economy would be a difficult task at best and plaintiff was actively seeking employment when the State filed the Felony drug charges.

53. Plaintiff continued to search to replace her income and maintain her household. Each time that Plaintiff authorized a potential employer with whom she was considered a qualified candidate to conduct a background check, the arrest record and pending Felony drug charges, a matter of public record, would immediately disqualify her from consideration. One potential employer verified in writing the basis for her withdrawal from consideration, i.e. pending Felony drug charges.

54. Plaintiff sought advice from an employment counselor who advised Plaintiff to temporarily stop seeking employment in her chosen career, as her arrest record and Felony drug charges were a matter of public record; the more this information became common knowledge among the Insurance community, the less likely Plaintiff would ever be employable, irrespective of the outcome of a trial. Plaintiff therefore temporarily stopped seeking employment and nearly fell to financial ruin. Her estranged husband, still unemployed himself, left the State of Arizona and elected to establish residency in another State, where his residency remains.

55. After the Dismissal was filed, Plaintiff then asked her counsel to seek relief from the Court to correct the record so that she is not subject to ongoing public access to the arrest and Felony drug charges. Plaintiff's defense counsel would not seek relief from the Court as he advised Plaintiff that the State would likely re-file the charges against Plaintiff, and the State would then have the right to undertake discovery in Plaintiff's prosecution as though no time bars or other restrictions to the State's actions had ever passed, all to the significant harm of Plaintiff. In fact, the State will have until May 17, 2017 to re-file the charges. When Plaintiff informed her defense counsel that she would rather have the State re-file the charges so that she could have her record and good name cleared, her counsel advised her that this was not an option, and advised Plaintiff that he could not do anything to help Plaintiff.

56. Plaintiff has attempted to resume her search for employment. The record continues to reflect Felony drug charges and is a matter of public record. Plaintiff continues to be prejudiced by this public information and the State's intentional prevention of

Plaintiff's right to a speedy trial to exonerate herself from these egregious charges, all to her mental and financial harm.

## COUNT I – 42 U.S.C. §1983 VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS (UNJUST USE OF EXCESSIVE FORCE)

57. Plaintiff incorporates into this cause of action each and every other allegation of this Complaint, to the extent relevant as is fully set forth herein.

58. The conduct of STANLEY violated the right of Plaintiff to be secure in her person against unreasonable seizures and unreasonable use of force as guaranteed by the Fourth Amendment.

59. STANLEY's use of excessive force was unreasonable because STANLEY did not have probable cause to believe Plaintiff had committed a crime or that she posed a significant or imminent threat to Defendant.

60. STANLEY's use of force was unreasonable, because Plaintiff advised STANLEY that she had been serving alcohol and requested a Blood Alcohol Test to be administered as soon as possible. She willfully cooperated with Defendant in every manner, having chosen to exercise her right to refuse a FST and PBT in lieu of a Blood draw, a test known to be many times more accurate than a PBT. Moreover, Plaintiff was willing to undergo a PBT after the second officer who could verify the results had arrived, in order that Plaintiff was not subjected to STANLEY's unreasonable and excessive force all to her detriment. The unidentified officer is witness to STANLEY's use of unreasonable force and refusal to allow Plaintiff to undergo a PBT in the witness of another officer who could verify the results.

61. Even after STANLEY unlawfully administered the HGN test causing significant pain and suffering to Plaintiff, and after he had placed handcuffs so unreasonably tight onto Plaintiff's wrists as to cause her hands to lose feeling, STANLEY had available to him alternatives, to wit, Plaintiff repeatedly requested that STANLEY allow her to take the PBT test in the presence of another officer to affirm that she had not been drinking; STANLEY refused and continued to use excessive force, in an attempt to document

1   that he "had not" unreasonably and unnecessarily placed the cuffs onto Plaintiff's

2   wrists so tight as to cut and bruise the Plaintiff's arms and wrists and cause her to lose

3   feeling in her hands.

4   62. As a proximate cause of Defendants' actions, Plaintiff suffered special damages in the

5   form of bodily injury, property damage, expenses and attorney fees in an amount to be

6   proven at trial.

7   63. The acts and omissions of STANLEY as set forth in this Complaint were done

8   knowingly, intentionally or recklessly and inflicted injury upon Plaintiff in conscious,

9   wanton and callous disregard of Plaintiff's Constitutional rights; and by reason thereof,

10   Plaintiff claims exemplary and punitive damages from STANLEY in a sum to be

11   determined at the time of trial.

12

13   **COUNT II – 42 U.S.C. §1983 VIOLATION OF FOURTEENTH AMENDMENT**

14   **RIGHTS (RIGHT TO LIBERTY)**

15   64. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 62.

16   65. Defendant's actions were arbitrary and egregious. STANLEY had no cause to believe

17   that Plaintiff posed a threat to him, to herself, or to the Public at large. Yet STANLEY

18   placed handcuffs on Plaintiff, displayed noticeable anger and aggression toward

19   Plaintiff, physically injuring her, and damaging her property in total disregard for her

20   safety and wellbeing, or right to liberty.

21   66. The acts and omissions of STANLEY as set forth in this Complaint were done

22   knowingly, intentionally and maliciously and for the purpose of harassment,

23   oppression and infliction of injury to Plaintiff in wanton and callous disregard of

24   Plaintiff's safety and in violation of her civil rights; and by reason thereof, Plaintiff

25   claims exemplary and punitive damages from STANLEY in a sum to be determined at

26   the time of trial.

27

28   **COUNT III – 42 U.S.C. §1983 VIOLATION OF FOURTH AND FOURTEENTH**

**AMENDMENTS (ARREST WITHOUT PROBABLE CAUSE)**

67. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 65.

68. After the second unidentified officer arrived, Plaintiff recognized that there would be a witness to the outcome of a PBT test and Plaintiff asked repeatedly for STANLEY to allow her to undergo the PBT so that she could demonstrate that Plaintiff had not been drinking as STANLEY claimed.

69. Instead, STANLEY advised Plaintiff that her opportunity to cooperate was gone, that it was too late; that Plaintiff no longer would be afforded the opportunity to complete a PBT. STANLEY's statement that Plaintiff would not be permitted to take the PBT was made with the intent to withhold Plaintiff's desire to have a witness available to verify the result of the test, in justification of his abusive treatment and use of excessive force.

70. STANLEY further falsified his report by making statements after the fact, and only describing Plaintiff's alleged swaying, inability to walk, flush face and watery eyes during times when there were no witnesses to corroborate his statements.

71. STANLEY intentionally failed to identify the second officer who responded at the scene so that Plaintiff would be unable to request his testimony and observations of Plaintiff's physical condition and responses in contradiction to STANLEY's false statements contained within his report, or verify whether STANLEY had probable cause to arrest the Plaintiff in spite of her request to complete the PBT after he had arrived.

72. As a direct result of STANLEY's actions and inactions, Plaintiff incurred physical pain, suffering, emotional trauma, embarrassment, attorney fees and expenses to prevent criminal prosecution and other damages according to proof at trial.

73. The acts and omissions of STANLEY as described herein were done knowingly, intentionally or recklessly and inflicted injury upon Plaintiff in conscious, wanton and callous disregard of Plaintiff's Constitutional rights; and by reason thereof, Plaintiff claims exemplary and punitive damages from STANLEY in an amount to be determined by the jury at time of trial.

**COUNT IV – 42 U.S.C. §1983 VIOLATION OF FOURTH AND FOURTEENTH**

**AMENDMENTS (SEARCH AND SEIZURE)**

74. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 72.

75. STANLEY performed the search of Plaintiff's vehicle complained of herein, and search of a closed container within Plaintiff's handbag, failed to inquire of Plaintiff whether the pills legally in Plaintiff's possession were in fact her own prescriptions, knowing that Plaintiff was a cancer patient. Defendant violated Plaintiff's rights under the Fourth Amendment to be free from unreasonable searches and seizures and to be free from Defendant's intent to justify Plaintiff's improper detention and arrest when he knew or reasonably should have known that Plaintiff had not been drinking; all in violation of Plaintiff's right to due process and privacy under the Fourteenth Amendment.

76. By performing the complained of search in the manner herein described, Defendant directly and proximately harmed Plaintiff, as alleged, entitling Plaintiff to recover damages for said Constitutional violations pursuant to 42 USC §1983.

77. The acts and omissions of STANLEY were done knowingly, intentionally and maliciously and for the purpose of harassment, oppression and infliction of injury upon Plaintiff, and in a reckless, wanton and callous disregard of Plaintiff's safety, security and Civil rights; and by reason thereof, Plaintiff claims exemplary and punitive damages from Defendants in a sum to be determined at the time of trial.

**COUNT V – 42 U.S.C. §1983 MUNICIPAL LIABILITY**

78. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 76.

79. The SPD and the CITY OF SCOTTSDALE were deliberately indifferent to the proper training and supervision of its personnel in allowing its officers to illegally and improperly use excessive force in such a manner as to injure Plaintiff's person and property when Plaintiff posed no threat; volunteered to first have blood drawn to demonstrate that she had not been drinking, then asking to have STANLEY conduct the PBT test in the witness of another officer; to illegally and improperly search

plaintiff's property and person and seize property not rightfully obtained with full knowledge that Plaintiff was a cancer patient, in failing to inquire of Plaintiff whether the pills in her possession were in fact her own prescription drugs.

80. The above described policies, customs and failure to train and supervise demonstrate a deliberate indifference on the part of the policymakers of the CITY OF SCOTTSDALE to the Constitutional rights of persons within the city, and were the cause of the violation of Plaintiff's rights alleged herein.

81. The CITY OF SCOTTSDALE's failure to properly train and supervise its' officers in order not to violate the Plaintiff's rights was done knowingly, intentionally and in total disregard of Plaintiff's rights, and by reason thereof, Plaintiff claims exemplary and punitive damages from CITY OF SCOTTSDALE in a sum to be determined at the time of trial.

### COUNT VI – 42 U.S.C. §1983 VIOLATION OF FOURTH AMENDMENT (INVASION OF PRIVACY)

82. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 80.

83. STANLEY owed a duty to Plaintiff to respect the Plaintiff's right to be secure in her person against unreasonable search. STANLEY knew or should reasonably have known that Plaintiff posed no threat to Defendant, herself, or the Public at large by requesting privacy to use the bathroom. By way of demanding that the Plaintiff urinate in the view of the Defendant without just cause, STANLEY violated her fourth amendment right to privacy and right to be free from unreasonable search.

84. In doing so, STANLEY caused embarrassment and humiliation to Plaintiff.

85. STANLEY's violation of Plaintiff's rights was done knowingly, intentionally and maliciously and for the purpose of harassment, oppression and intentional humiliation to Plaintiff, and in reckless, wanton and callous disregard of Plaintiff's safety, security and Civil rights; and by reason thereof, Plaintiff claims exemplary and punitive damages from STANLEY in a sum to be determined at trial.

## COUNT VII – NEGLIGENCE

86. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 84.

87. STANLEY owed a duty to Plaintiff to use due care.

88. STANLEY breached the duty of due care when he injured Plaintiff's person and property, improperly and illegally searched her person and property and illegally and improperly seized Plaintiff's property.

89. STANLEY further breached the duty of care when he falsely portrayed that Felony drug charges had been filed against Plaintiff in order to prevent her from claiming her handgun for 7 months.

90. Defendant's breach of the duty of care was the proximate or legal cause of the resulting harm to Plaintiff.

91. As a direct and proximate result of the aforesaid, Plaintiff has suffered extreme harm and thereby general damages in an amount according to proof at trial.

92. STANLEY was at all times relevant to this action, acting in the course and scope of his employment as an employee of the CITY OF SCOTTSDALE.

93. The CITY OF SCOTTSDALE, as the employing entity, is liable for the actions of its employees under the doctrine of *respondeat superior.*

94. Plaintiff has been damaged as a result of Defendant's actions and is entitled to damages in sum to be determined at trial.

## COUNT VIII – ABUSE OF PROCESS

95. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 86.

96. Plaintiff filed her timely written claim for damages in the form and manner prescribed by law as set forth above. The CITY OF SCOTTSDALE refused to acknowledge, accept or deny Plaintiff's modest claim for damages. SPD by and through Sgt. Luis Santela, refused to investigate the claim filed by Plaintiff without improper and unnecessary duress in requiring an in-person recorded statement or an Examination under Oath.

97. By and through its' prosecuting attorney PITTS, the STATE OF ARIZONA, COUNTY OF MARICOPA, and Does 1 – 30 inclusive, Defendants filed charges less than 90 days after the Plaintiff filed her notice of Claim. The Defendants knew, or in the course of reasonable care should have known that the CITY OF SCOTTSDALE had dismissed the related drug charges 5 months prior to filing the charges for Felony drug possession and felony possession of a dangerous drug. These charges remain a matter of public record.

98. Defendants willfully and wantonly abused the legal system as a matter of law by filing charges which had previously been dismissed; in failing to dismiss the charges when it became reasonably clear that a reasonable and prudent jury of Plaintiff's peers would not find the Plaintiff guilty beyond a reasonable doubt; in continuing to attempt to have Plaintiff plea to a lessor Felony charge; in falsely portraying Plaintiff's misdemeanor traffic citation as a way to justify their refusal to dismiss the charges; and in falsely misleading the Court that the dismissal of the case *without prejudice* was in the interest of justice when in fact, Defendants had not prosecuted the claim and were unable to sustain their case against Plaintiff.

99. All of the actions of the Defendants were done with the ulterior purpose of attempting to prevent the Plaintiff from bringing legal action against STANLEY and the CITY OF SCOTTSDALE so that they could hide or mask the policies and practices of SPD and its' officers of brutalizing innocent citizens when they choose not to be subjected to falsely documented crimes beyond a reasonable and probable cause. Defendants continue to maintain that Plaintiff should expect that the charges will be re-filed should she pursue this very Complaint, as stated by her own defense counsel.

The acts and omissions of the Defendants were done knowingly, intentionally and maliciously and for the purpose of damaging the Plaintiff's reputation and actively and constructively preventing plaintiff from obtaining gainful employment. By reason thereof, Plaintiff claims exemplary and punitive damages from Defendants in a sum to be determined at the time of trial.

## COUNT IX – DEFAMATION OF CHARACTER

100.    Plaintiff realleges and incorporates by reference herein paragraphs 1 through 99.

101.    Defendants, each of them, knew, or in the course of reasonable investigation, should have known that Plaintiff was in possession of her own prescription medication and that she had not committed a Felony. Yet Defendants each of them willfully and knowingly filed Felony charges against the Plaintiff in an effort to defame her and prevent her from pursuing a modest claim against STANLEY and SCOTTSDALE to recover for her injuries, property damage, expenses and attorney fees as a result of the improper and illegal search and seizure and use of excessive force simply because Plaintiff refused STANLEY's demand that she take a FST and PBT.

102.    The Felony charges remain a matter of public record and Plaintiff continues to suffer from damage to her reputation as the charges have defamed her. Plaintiff is a private person and chose not to make public her medical condition for fear of discrimination against her as a cancer patient. Plaintiff has now been forced to reveal her medical condition through the filing of this Complaint, and to make her medical condition public.

103.    The Felony charges remain a matter of public record and Plaintiff continues to suffer from damage to her reputation as the charges have defamed her. Plaintiff is further damaged by the failure of the STATE OF ARIZONA and THE COUNTY OF MARICOPA to dismiss the charges *with* prejudice in the interest of justice so that Plaintiff may attempt to repair her reputation and find gainful employment.

## COUNT X – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

104.    Plaintiff realleges and incorporated by reference herein paragraphs 1 through 103.

105.    Defendants' conduct, as previously described, was intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish and severe emotional distress.

106.    As a result of Defendants' actions Plaintiff suffered damages as aforesaid.

107.   The above described acts were done with malice, evidencing oppression thus entitling Plaintiff to recover punitive damages to punish the Defendants.

108.   At all times relevant to this action, Defendants were employees of the CITY OF SCOTTSDALE, STATE OF ARIZONA or COUNTY OF MARICOPA.

109.   At all times relevant to this action, Defendants were acting within the course and scope of their employment as employees of the CITY OF SCOTTSDALE, STATE OF ARIZONA or COUNTY OF MARICOPA.

110.   The CITY OF SCOTTSDALE, STATE OF ARIZONA or COUNTY OF MARICOPA as the employing entities, are liable for the actions of their employees under the doctrine of *respondeat superior;* however none of the defendants with the exception of STANLEY is obligated to pay punitive damages.

### COUNT XI – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

111.   Plaintiff realleges and incorporates by reference herein paragraphs 1 through 110.

112.   When STANLEY used undue and excessive force, then refused to allow Plaintiff to complete a PBT in the presence of the second officer to avoid a witness to the results of the PBT, refused to allow Plaintiff to utilize the restroom without requiring her to publicly urinate in plain sight, and in failing to ascertain whether Plaintiff was in possession of her own prescription drugs knowing full well that Plaintiff was a cancer patient, caused Plaintiff to suffer severe emotional and physical distress.

113.   At all times relevant to this action, STANLEY was an employee of the CITY OF SCOTTSDALE.

114.   At all times relevant to this action, STANLEY was acting within the course and scope of his employment as an employee of the CITY OF SCOTTSDALE.

115.   The CITY OF SCOTTSDALE as the employing entity is liable for the actions of its employees under the doctrine of *respondeat superior.*

**WHEREFORE, the Plaintiff prays for judgment against each of the Defendants as follows:**

A. Compensatory damages to Plaintiff in an amount within the jurisdiction of this Court to be determined by the jury.

B. Exemplary and Punitive damages in an amount within the jurisdiction of this Court and as permitted by law, to be determined by the jury.

C. Complete and total dismissal *with* prejudice of all Felony drug charges levied against Plaintiff.

D. Expongement of all records pertaining to the false and unjust Felony charges exerted against Plaintiff, so that she is no longer subject to public humility and embarrassment and may return to seeking gainful employment.

E. Attorneys' fees and costs as permitted under 42 U.S.C. §1983.

F. Any other relief that this Court may deem proper.

DATED this 16 of May, 2012.

Respectfully submitted;

By: _____

Joyce B. Spies, Defendant, Pro Se