**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joyce B. Spies,<br><br>                Plaintiff,<br><br>v.<br><br>City of Scottsdale, Arizona, et al.,<br><br>                Defendants. | No. CV12-1020 PHX DGC<br><br>**ORDER** |

       Defendants Maricopa County, Jeffrey Pitts, Suzanne Reed, and Kalon Metz ("County Defendants"); State of Arizona ("State Defendant"); and City of Scottsdale and Officer David Stanley ("City Defendants") filed separate motions to dismiss Plaintiff's complaint. Docs. 9, 10, & 14. *Pro se* Plaintiff Joyce B. Spies failed to file timely responses, and the Court issued on order on February 13, 2013, advising her that she would have until March 1, 2013, to respond or her complaint would be summarily dismissed. Doc. 15. Plaintiff filed responses to County Defendants' and City Defendants' motions on March 1, 2013, and these Defendants filed replies. Docs. 16 & 17; 18 & 19. Plaintiff did not respond to State Defendant's motion. For the reasons that follow, the Court will grant City Defendants' motion in part and deny it in part and grant County and State Defendants' motions.

**I.    Background.**

       Plaintiff alleges that after working at her catering job from 5:00 a.m. on May 16, 2010, to approximately 1:00 a.m. the next day, she was extremely fatigued and, while driving home, began to fall asleep, causing her vehicle to stray. Doc. 1, ¶¶ 10 & 11.

Scottsdale Police Officer David Stanley stopped Plaintiff, who confirmed that she had been falling asleep and unknowingly weaving between traffic lanes. *Id.*, ¶ 12.

Plaintiff alleges that she had been serving wine on her job but had not been drinking, that she told Officer Stanley she had not been drinking, but that he accused her of lying because he could smell alcohol. *Id.*, ¶ 12. Officer Stanley also asked Plaintiff if she was carrying a firearm, and she told him she had a handgun in the glove box for which she had a concealed weapon permit. *Id.*, ¶ 13. Officer Stanley ordered Plaintiff to exit the vehicle and confiscated the handgun. *Id.*

Plaintiff alleges that, without warning, Officer Stanley shone a bright light into her eyes in order to conduct a horizontal gaze nystagmus ("HGN") test, and screamed at her, demanding to know how much she had been drinking. *Id.*, ¶14. Plaintiff alleges that she felt immediate pain and the onset of a migraine due to the bright light. *Id.*, 14-15. Officer Stanley asked her if she was taking any medications, to which she responded that she was a cancer patient and took migraine medications. *Id.*, 14. Officer Stanley attempted to conduct a field sobriety test and a breathalyzer test, but Plaintiff refused these tests and requested to have her blood drawn instead. *Id.*, ¶¶ 15-16.

Plaintiff alleges that Officer Stanley demanded to know why she would not take the field tests. *Id.*, ¶ 16. He then grabbed her upper arm with enough pressure to leave pattern bruises, twisted her arms behind her back, and applied handcuffs with such force that she lost feeling in her hands. *Id.*, ¶ 17. A second patrol officer arrived and placed Plaintiff in the back seat of Officer Stanley's car while Officer Stanley searched Plaintiff's vehicle. *Id.*, ¶ 18. When Officer Stanley returned to the car, Plaintiff complained that the handcuffs were cutting into her wrists and asked that he loosen them. Officer Stanley forced a finger between one cuff and the interior tissue of Plaintiff's wrist, scraping several layers of skin, to show her it was not too tight. *Id.*, ¶ 20. Plaintiff then asked to take the breathalyzer test in the presence of the second officer, but Officer Stanley refused and continued to yell at her. *Id.*, 21-22.

Officer Stanley transported Plaintiff to Scottsdale Health North where a female

phlebotomist drew her blood. *Id.*, ¶ 23. Plaintiff told the phlebotomist that she was a breast cancer patient, that her oncologist had instructed her that blood be taken only from her right arm, and she showed her scars, all in the presence of Officer Stanley. *Id.*, ¶ 23. After the blood draw, Plaintiff was permitted to use the restroom, but Officer Stanley insisted she leave the door open, and he stood at the door where he could watch her through her reflection in the mirror. *Id.*, ¶ 24.

Plaintiff was taken to the police station where she was searched and booked. *Id.*, ¶ 25. Officer Stanley inventoried her purse and found a mixture of prescription medications, including Oxycodone and Topiramate, in an Excedrine Migraine bottle rather than in original prescription bottles. *Id.*, ¶¶ 25-26. Plaintiff was given a traffic ticket and complaint charging her with possession of prescription-only drugs, two counts of driving under the influence of alcohol ("DUI"), and failure to drive in a single lane. *Id.*, ¶ 27. The Crime Laboratory of the Scottsdale Police Department sent Officer Stanley the results of Plaintiff's blood alcohol tests the next day showing that Plaintiff had 0% alcohol in her system. *Id.*, ¶ 29.

Plaintiff was later prosecuted by the City of Scottsdale. *Id.*, ¶ 30. The City dropped the DUI charges when Plaintiff's retained-counsel obtained and furnished the results of her blood alcohol test. *Id.*, ¶¶ 29-30. The City also agreed to drop the drug charges upon receipt of Plaintiff's prescriptions showing that the drugs in the Excedrine bottle had been prescribed for her. *Id.*, ¶ 31. The City made this agreement on October 4, 2010, pending the results of a toxicology report and in exchange for a guilty plea on a charge of unsafe lane change. *Id.*

On February 7, 2011, the State of Arizona filed felony drug charges against Plaintiff stemming from the same incident. *Id.*, ¶ 37. Plaintiff furnished copies of the City of Scottdale's dismissal and her prescriptions to Deputy County Attorney Jeffrey Pitts, but Mr. Pitts refused to drop the charges, claiming Plaintiff's prescriptions were outdated. *Id.* The State made repeated offers to Plaintiff to plead guilty to a lesser felony charge which Plaintiff, acting through court-appointed counsel, refused. *Id.*, ¶ 39. The

case was assigned to Maricopa County Superior Court and a new prosecutor, Deputy County Attorney Suzanne J. Reed, made Plaintiff an identical plea offer, which she again refused. *Id.*, ¶¶ 40-42. Deputy County Attorney Kalon Metz[1] prepared to take the case to trial, but the State filed a motion to dismiss the charges without prejudice and the final pretrial conference and trial date were vacated on September 13, 2011. *Id.*, ¶¶ 48-49.

Plaintiff alleges that she was laid off from her primary employment in September, 2010, and was prejudiced in her search for work while the State's felony drug charges were pending against her because the charges were a matter of public record that came up during routine background checks and kept her from being hired by potential employers. *Id.*, ¶¶ 52-54. Plaintiff alleges that even after the State dismissed its charges, she was and continues to be harmed through the inability to have her name cleared because the State's dismissal was without prejudice, giving it until May 17, 2017 to re-file the charges, and the State will neither clear her record nor re-file the charges to allow her to exonerate herself. *Id.*, ¶¶ 55-56.

Plaintiff filed the instant complaint on May 16, 2012. The complaint makes five claims against Officer Stanley pursuant to 42 U.S.C. § 1983: (1) violation of Plaintiff's Fourth Amendment rights (excessive force), (2) violation of her Fourteenth Amendment rights (right to liberty), (3) violation of her Fourth and Fourteenth Amendment rights (arrest without probable cause), (4) violation of her Fourth and Fourteenth Amendment rights (search and seizure), and (5) violation of her Fourth Amendment rights (invasion of privacy). *Id.*, ¶¶ 57-77, 82-85. The complaint makes an additional § 1983 claim against the City of Scottsdale for failure to properly train and supervise its officers (*id.*, ¶¶ 78-81) and a number of state law claims against some or all Defendants. *Id.*, ¶¶ 86-115.

**II.   Legal Standard.**

When analyzing a complaint for failure to state a claim to relief under Rule

---

[1] The complaint refers to "Deputy Attorney Katz." Doc. 1, ¶¶ 44, 46-47. The Court assumes that this is a reference to Kalon Metz, the Maricopa County Deputy Attorney identified in the caption of the complaint and in the County Defendants' motion to dismiss. Doc. 9.

12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is appropriate where the complaint lacks a cognizable legal theory, lacks sufficient facts alleged under a cognizable legal theory, or contains allegations disclosing some absolute defense or bar to recovery. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988); *Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n.1 (9th Cir. 1997).

**III.   City Defendants' Motion to Dismiss.**

    **A.   Plaintiff's State Law Claims.**

City Defendants contend that all of Plaintiffs state law claims against them should be dismissed because she did not file them within one year of the precipitating events, as required under A.R.S. § 12-821, and she did not provide any City Defendants with a notice of claim within 180 days of the relevant events as required under A.R.S. § 12-821.01. Doc. 14 at 5-6. Plaintiff argues that A.R.S. § 12-821 was modified to contain the one year statute of limitations on February 19, 2012, and therefore does not apply to the events in this case. Doc. 17 at 5.

A.R.S. § 12-821 states that "[a]ll actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." Ariz. Rev. S. § 12-821. This provision arose from a number of amendments to Arizona's tort laws in 1993 and 1994. *See* Act of April 13, 1993, Ch. 90 § 8, 1993 Ariz. Legis. Serv. Ch. 90 (S.B. 1055) (West) (tort reform); Act of April 19, 1994, Ch. 162 § 1, 1994 Ariz. Legis. Serv. Ch. 162 (S.B. 1284) (West) (actions against public entities or public employees). The original version of § 12-821 in 1993, and the amended version in

1994, each contained the one year limitation. *See id.*

The allegations in the complaint that support Plaintiff's claims against Officer Stanley all occurred at the time of Plaintiff's arrest on May 17, 2010, or shortly thereafter when, Plaintiff alleges, Officer Stanley falsified his observations in his police report and falsely filed felony drug charges against her. Doc. 1, ¶¶ 28-29, 89, 101. Because Plaintiff did not file her complaint until nearly two years later on May 16, 2012, her state law claims against Officer Stanley are untimely.

Plaintiff's remaining state law claims against the City of Scottsdale, with the exception of Count VIII (abuse of process), all stem from the alleged wrongful actions of Officer Stanley and are likewise untimely. *See id.*, ¶¶ 93, 101, 110, 115. Count VIII alleges that the City of Scottsdale refused to acknowledge or investigate a claim for damages Plaintiff filed with them on November 5, 2010, because she refused to submit to an examination under oath. *Id.*, ¶¶ 32, 34, 96. The complaint fails to give a clear time-frame for these alleged actions, but they appear to have happened in close proximity to the November 2010 filing of Plaintiff's request for damages. Plaintiff has made no argument that any actions alleged in the complaint occurred after May 16, 2011, which would put them within the one year statute of limitations. Accordingly, the Court finds that Plaintiff's claims against the City of Scottsdale are also untimely.

The Court will dismiss all of Plaintiff's state law claims against City Defendants.

**B.     Plaintiff's § 1983 Claims.**

"To state a claim for relief in an action brought under 42 U.S.C. § 1983, [Plaintiff] must [allege] that [she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50 (1999). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, (1979)). "It is well settled that section 1983 'imposes liability for violations of rights protected by the Constitution, not for violations

of duties of care arising out of tort law." *Johnson v. Barker,* 799 F.2d 1396, 1399 (9th Cir.1986) (quoting *Baker,* 443 U.S. at 146).

City Defendants argue that all of Plaintiff's § 1983 claims against Officer Stanley fail because he is entitled to qualified immunity. Doc. 14 at 6-7. When determining whether a state actor is entitled to qualified immunity, the Court first asks whether the plaintiff has made a *prima facie* showing that the state actor violated the plaintiff's constitutional rights. *Orin v. Barclay*, 272 F.3d 1207, 1214 (9th Cir. 2001); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the facts alleged show a constitutional violation, the Court next determines whether the law was clearly established. *Saucier*, 533 U.S. at 201. Finally, if the law was clearly established, yet based on the circumstances, the state actor made a mistake regarding what the law required, the officer will be entitled to immunity if the mistake was reasonable. *Id.* at 205.

### 1. Count I: Excessive Force.

Plaintiff brings her excessive force claim under the Fourth Amendment's protection against unreasonable seizures. *See Graham v. Connor*, 490 US. 386, 394 (1989); U.S. Const. amend. IV. "Excessive force claims, like most other Fourth Amendment issues, are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207 (2001). The reasonableness of a particular use of force depends on the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 US. at 396. The operative question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The reasonableness assessment must take into account "the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.*

1 Plaintiff alleges that Officer Stanley caused her significant pain and suffering, both by administering the HGN test and by wrenching her arms backwards and placing handcuffs on her that were unreasonably tight. Doc. 17 at 7-8; *see* Doc. 1, ¶¶ 14, 15, 17, 20, 61. She also argues that Officer Stanley insisted that she be taken for a blood draw after she had agreed to submit to a breathalyzer test in the presence of a second officer who had arrived on the scene. Doc. 17 at 7-8; *see* Doc. 1, ¶ 22.

Officer Stanley's alleged use of the HGN and blood draw – standard tests used to detect alcohol consumption – are insufficient to support a claim of unreasonable force in light of the facts, acknowledged in the complaint, that Officer Stanley stopped Plaintiff after 1:00 a.m., for weaving across traffic lanes, could smell alcohol on Plaintiff's person, and Plaintiff initially refused a Breathalyzer test. *See* Doc. 1, ¶¶ 11-12.

Plaintiffs allegations that Officer Stanley forcibly twisted her arms, leaving pattern bruises, applied the handcuffs so tightly that she lost feeling in her hands, and scraped through multiple layers of skin when he jammed a finger into a cuff to show it was not too tight – all without Plaintiff resisting arrest or doing anything to pose a threat – are sufficient to show a violation of the Fourth Amendment that is clearly established under Ninth Circuit law. In *Wall v. County of Orange*, 364 F.3d 1107, 1109, 1112 (2004), the Ninth Circuit held that an officer "violated a clearly established constitutional right to be free of excessive force" when he placed handcuffs on a plaintiff that were "extremely tight" and did not respond to requests to loosen them. *Wall* cited other cases in which the Ninth Circuit found allegations of overly tight handcuffs sufficient to support a Fourth Amendment claim. *Id.* at 1112; *see, e.g., Alexander v. County of Los Angeles*, 64 F.3d 1315, 1322-23 (9th Cir. 1995) (officers placed handcuffs so tightly on an arrestee that his hands became swollen and turned blue and then denied his initial requests to loosen them); *Meredith v. Erath*, 342 F.3d 1057, 1060, 1063 (9th Cir. 2003); (finding that "a reasonable officer would have known, in July 1998, that to place and keep Bybee in handcuffs that were so tight that they caused her unnecessary pain violated her right to be free from an unreasonable seizure."); *LaLonde v. County of Riverside*, 204 F.3d 947, 952,

960 (9th Cir. 200) (finding that officers refusal to loosen handcuffs where an arrestee complained that they were too tight and were "cutting off [his] circulation" could support a claim that force was unreasonable).

City Defendants argue that where the Ninth Circuit has found tight handcuffing sufficient to support a Fourth Amendment violation it has also found more substantial injuries than Plaintiff alleges or that the police completely ignored an arrestee's requests to loosen the handcuffs. Doc. 14 at 13, n. 6. They note that the plaintiff in *Wall* suffered a nerve injury as a result of his handcuffs (*id.*, citing 364 F.3d at 1109-12), and they cite to *Palmer v. Sanderson*, 9 F.3d 1433, 1434-36 (9th Cir. 1993), in which the arrestee's wrists became discolored and the officer ignored his complaint. *Id.* These cases do not show that Plaintiff has failed to allege sufficient facts to support her excessive force claim. Although the plaintiff in *Wall* produced evidence at summary judgment that he suffered nerve damage, the court did not state what level of injury would be required to state a Fourth Amendment claim. Additionally, the Ninth Circuit did not cite to evidence of lasting injury in *LaLonde* or *Meredith*, and in *Palmer* it found it sufficient that the arrestee experienced pain and bruising and that the officer ignored her complaints. 9 F.3d at 1436. Here, Plaintiff alleges that Officer Stanley caused pattern bruising by abruptly grabbing her by the upper arm and twisting her arms – even after she had agreed to submit to a blood test – and applied the handcuffs with so much pressure that she lost feeling in her hands. Doc. 1, ¶¶ 17. She also alleges that Officer Stanley did not loosen the handcuffs when she complained, but instead told her they were "not meant to be a fashion statement" and forced a finger into one of the cuffs, scraping her wrist in the process. *Id.*, ¶ 20. These allegations are sufficient to state a claim that Officer Stanley violated a clearly established rule under *Wall* and the cases upon which it relies. 364 F.3d at 1112; *see also, Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) (finding excessive force where officer applied handcuffs to unresisting plaintiff in a "rough and abusive" manner, and the plaintiff was treated for pain in her upper arm and finger and bruises on her wrist and arm).

Defendant's citations to other cases in which courts have found insufficient evidence of excessive force due to handcuffing are unavailing. In *Peters v. City of Huron*, No. 1:08-CV-321 AWI SMS, 2009 WL 4048684 (E.D. Cal. Nov. 20, 2009), the court found that the plaintiff had given no meaningful description of how she was handcuffed or the amount of force used, and had not claimed to have told the officer she was in pain. In *Gold v. City of Miami*, 121 F.3d1442, 1446 (11th Cir. 1997), the plaintiff did not allege forceful application of handcuffs and only alleged pain and minor skin abrasions, not bruises or tissue scraping. Other cases, including *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001), *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990), *Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir. 2005), and *Orsak v. Metro. Airports Comm'n Airports Police Dep't*, 675 F.Supp.2d 944, 956 (D. Minn. 2009), all required a showing of actual, long-term or permanent injury, a standard that does not apply under Ninth Circuit precedent. Additionally, *Glenn* based its finding, in part, on a lack of evidence that the officer acted with malice, a factor the Supreme Court has found irrelevant to excessive force claims. 242 F.3d at 314; *see Graham*, 490 US. at 397. Finally, the facts in *Tibbs v. City of Chicago*, 469 F.3d 661 (7th Cir. 2006), do not rise to the level of injury alleged in Plaintiff's complaint. In *Tibbs*, the plaintiff alleged that his handcuffs were too tight and the arresting officer declined to adjust them, resulting in redness to his wrists that lasted a day and a half. 469 F.3d at 663. The court noted that Tibbs complained about the handcuffs "without elaborating on any injury, numbness, or degree of pain," and found that no reasonable jury could find the arresting officer's actions objectively unreasonable on the basis of such "mild allegations." *Id.* at 666. *Tibbs* did not contain allegations of forcible arm-twisting, bruising, hand-numbness, and tissue-scraping as are present here. Moreover, all of these cases found insufficient evidence at summary judgment, not at the pleading stage, where the Court need only find that the facts alleged, taken as true, are sufficient to state a claim. In light of the above-cited Ninth Circuit precedent, the Court finds that Plaintiff has alleged sufficient facts related to improper handcuffing to state a Fourth Amendment claim and that, absent any

facts showing that Officer Stanley made a reasonable mistake, the law was sufficiently established at the time of Plaintiff's arrest to preclude dismissal on qualified immunity grounds.

### 2. Count II: Violation of Right to Liberty.

Plaintiff alleges that Officer Stanley violated her Fourteenth Amendment right to liberty by handcuffing her when she posed no threat, displaying anger and aggression toward her, and causing her physical injury. Doc. 1, ¶ 65. To the extent that this claim rests on the allegation that handcuffing and detention, alone, were improper, the allegations do not support this claim. "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham,* 490 U.S. at 396. Officer Stanley had the right to arrest Plaintiff because he observed her car weaving across traffic lanes and she admitted to falling asleep at the wheel. Moreover, Plaintiff requested a blood test from a medical center to which Officer Stanley had to transport her. It was not unreasonable, under these circumstances, for Officer Stanley to arrest and detain Plaintiff. To the extent that this claim rests on allegations that Officer Stanley administered the HGN test and applied and tested the handcuffs in an abusive manner, the Court will dismiss this claim as duplicative of the claims already addressed above.

### 3. Count III: Arrest without Probable Cause.

A warrantless arrest is constitutional if based on probable cause. *United States v. Thornton*, 710 F.2d 513, 515 (9th Cir. 1983) (citing *Gerstein v. Pugh*, 420 U.S. 103, 111-14 (1975)); *see United States v. Bernard*, 623 F.2d 551, 558-59 (9th Cir. 1979) ("An arrest without a search warrant and a reasonable search incident to the arrest are valid if the arrest is based on probable cause."). A police officer has probable cause to seek charges against a person when the officer "has reasonably trustworthy information of facts and circumstances sufficient to lead a reasonable [person] to believe that an offense has been committed and the person to be [charged] committed it." *Hansen v. Garcia*, 713 P.2d 1263, 1265 (Ariz. Ct. App. 1986); *see Gasho v. United States*, 39 F.3d 1420, 1248

(9th Cir. 1994) ("Probable cause exists when, 'under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability' that a crime was committed.") (citation omitted).  In *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), the Supreme Court held that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  532 U.S. at 354.  Probable cause to seek charges "may exist despite the fact that the charges are subsequently dismissed[.]"  *Hockett v. City of Tucson*, 678 P.2d 502, 505 (Ariz. Ct. App. 1984); *see Cullison v. City of Peoria*, 584 P.2d 1156, 1159 (Ariz. 1978) ("[W]hen the police make an arrest based upon probable cause, it is not material that the person arrested may turn out to be innocent, and the arresting officer is not required to conduct a trial before determining whether or not to make the arrest").

Officer Stanley observed Plaintiff weaving across lanes of traffic in the early morning hours, stopped her, and she smelled of alcohol.  These facts would permit a reasonably prudent person to conclude that a DUI crime had been committed.  Plaintiff argues that the negative results on her blood alcohol test show that Officer Stanley falsified his observations, including the results of the HGN test and Plaintiff's purported lack of physical coordination, to justify her arrest.  Doc. 17 at 7.  Even absent these additional facts, however, the allegations in the complaint respecting Plaintiff's erratic driving and the smell of alcohol were sufficient to create a fair probability that Plaintiff had committed a DUI offense.  Moreover, the fact that Plaintiff's offense later proved not to be alcohol related does not make his conclusion at the time of her arrest unreasonable.  The Court will dismiss Plaintiff's wrongful arrest claim.

**4.     Count IV: Unreasonable Search and Seizure.**

Plaintiff alleges that Officer Stanley's search of her vehicle and the closed pill bottle in her purse violated her Fourth and Fourteenth Amendment rights against unreasonable searches and seizures.  Doc. 1, ¶¶ 74-76.  Defendants argue that because Plaintiff was under arrest and would be taken away from any direct contact with her

vehicle and its effects for some time, the "community caretaker doctrine" justified the impoundment and inventory search of her vehicle. Doc. 14 at 14-15, 15, n. 8. This doctrine is an exception to the general rule against warrantless searches and seizures and grants police officers the right "to impound vehicles that jeopardize both the public safety and the efficient movement of vehicular traffic." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005) (quoting *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)). The doctrine applies "if the driver's violation of a vehicle regulation prevents the driver from lawfully operating the vehicle, and also if it is necessary to remove the vehicle from an exposed or public location." *Miranda*, 429 F.3d at 865 (citing *United Sates v. Gutierrez*, 995 F.2d 169, 171 (9th Cir. 1993)). Where the police have cause to impound a vehicle, they may also conduct an inventory search of its contents because they are "potentially responsible for the property taken into their custody." *Colorado v. Bertine*, 479 U.S. 367, 373 (1987). The United States Supreme Court has "consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents." *South Dakota v. Opperman*, 428 U.S. 364, 373 (1976).

Plaintiff argues that the "community caretaker" doctrine does not apply because her vehicle was parked on a side street in a high-value residential area and therefore did not pose a threat to the public or other damages such as vandalism. Doc. 17 at 9. In light of the deference accorded police when engaging in public caretaker functions (*see Bertine*, 479 U.S. at 372), these facts do not make the impoundment and inventory search of Plaintiff's vehicle unreasonable. Cases that have found impoundment of a vehicle unreasonable have involved seizure of a vehicle from the owner's driveway or seizure of a vehicle when another licensed driver was available to remove it from the scene. *Miranda*, 429 F.3d at 864-66.

Plaintiff also argues that the "community caretaker" doctrine does not apply because Officer Stanley conducted the search and seizure of her vehicle well before her arrest. Doc. 17 at 9. According to the facts alleged in the complaint, however, Plaintiff

was handcuffed and placed in the back of Officer Stanley's patrol car before he began the search. Doc. 1, ¶¶ 17-19.

The inventory search of Plaintiff's handbag, including contents of the Excedrin container, appears to have occurred when Plaintiff was brought to the police station where she was searched and booked. *See* Doc. 1, ¶ 25. The Supreme Court has found that such searches and seizures are reasonable because they implicate the same governmental interests in securing and protecting property that justifies the impoundment and inventory of vehicles. *Bertine*, 479 U.S. at 741 (noting that, as in *Opperman*, government's legitimate interests in taking and inventorying the shoulder bag of an individual brought into custody outweighed her Fourth Amendment concerns).

Because the facts alleged in the complaint show that the inventory searches of Plaintiff's vehicle and the contents of her purse were not unreasonable, the Court will dismiss Plaintiff's unreasonable search and seizure claim.

### 5. Count V: Municipal Liability.

Plaintiff claims that the Scottsdale Police Department[2] and the City of Scottsdale are liable under § 1983 because they were deliberately indifferent to the proper training and supervision of their personnel. Doc. 1, ¶ 79. This claim rests entirely on the allegations that Officer Stanley violated Plaintiff's constitutional rights. *Id.*, ¶¶ 79-81.

A local government cannot be held liable under § 1983 solely for the actions of its employees or agents. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Rather, it can be held liable only "when execution of a government's policy or custom . . . inflicts the injury[.]" *Id.* Thus, Plaintiff must show a policy, practice or custom of the City of Scottsdale which permitted the alleged constitutional violations to occur. *See Christie v. Iopa*, 176 F.3d 1231, 1234-35 (9th Cir. 1999).[3]

---

[2] Scottsdale Police Department is not a named party in this action and therefore not a proper § 1983 Defendant.

[3] Alternatively, Plaintiff can show that the government official: "(1) had final policymaking authority concerning the action alleged to have caused the particular constitutional or statutory violation at issue and (2) was the policymaker for the local

- 14 -

The only allegation in the complaint that could be construed as related to an impermissible government policy is that Plaintiff "knew it was common practice for [the Police Department] officers to document that a traffic stop victim had 'failed' a [field sobriety test] to obtain probable cause for an arrest." Doc. 1, ¶ 16. This bare assertion is both conclusory, and therefore not entitled to a presumption of truth (*Ashcroft*, 556 U.S. at 680), and insufficient to show that the City of Scottsdale had a policy of encouraging or permitting its officers' alleged "common practice" of falsifying field test results or that such a policy in any way caused Officer Stanley's alleged constitutional violations. *See Monell*, 436 U.S. at 692. Plaintiff's municipal liability claim against the City of Scottsdale is clearly insufficient as pled. The Court will dismiss this claim.

### 6. Count VI: Violation of Privacy.

Plaintiff alleges that Officer Stanley violated her Fourth Amendment rights to privacy and to be free from an unreasonable search by not allowing her to use the bathroom outside his view. Doc. 1, ¶ 83. City Defendants argue, and the Court agrees, that Plaintiff has not alleged that her use of the bathroom constituted a search or seizure, and she has therefore failed to state a cognizable claim under the Fourth Amendment. Doc. 14 at 18-19. The Court will dismiss this claim.

### C. Summary of Claims against City Defendants.

The Court has found that all of Plaintiff's state law claims against City Defendants are barred by the applicable statute of limitations. The Court will dismiss these claims with prejudice. Plaintiff has also failed to allege sufficient facts in her complaint – or to present any facts in her response – that would support a § 1983 claim against the City of Scottsdale. Of Plaintiff's § 1983 claims against Officer Stanley, only her claim of excessive force related to use of the handcuffs states a cognizable constitutional claim.

---

governing body for the purposes of the particular act." *Cortez v. County of Los Angeles*, 294 F.3d 1186, 1189 (9th Cir. 2002) (internal quotations and citation omitted). This alternative theory of § 1983 liability is not at issue in this case.

The Court will dismiss Plaintiff's § 1983 claim against the City of Scottsdale and Plaintiff's remaining § 1983 claims against Officer Stanley. Because the Court concludes that the legal flaws in these claims cannot be cured through amendment, they will be dismissed with prejudice.

**IV.    County Defendants' Motion to Dismiss.**

Plaintiff makes three claims against County Defendants: Count VIII – abuse of process; Count IX – defamation of character; and Count X – intentional infliction of emotional distress. Doc. 1, ¶¶ 97, 103, 110. These claims are all based on allegations that County Defendants pursued felony drug charges against Plaintiff after they already knew that the City of Scottsdale had dismissed its related drug charges, and they have damaged Plaintiff's reputation and character by failing to have the charges against her dismissed with prejudice. *Id.*, at ¶¶ 97, 103. Plaintiff additionally alleges that the County prosecutors acted at all times within the scope of their employment, and the County is liable for their actions under the doctrine of *respondeat superior*. *Id.*, ¶¶ 109-110.

County Defendants argue that all of Plaintiffs' claims against them should be dismissed because (1) they are statutorily barred under A.R.S. § 12-821.01 due to Plaintiff's failure to file a notice of claim against any County Defendants, (2) the allegations in Plaintiff's complaint are insufficient to state a claim, (3) Maricopa County bears no vicarious liability for the acts of Deputy County Attorneys as a matter of law, and (4) the individual county prosecutors are entitled to absolute prosecutorial immunity. Doc. 3-13. The Court agrees that County Defendants are entitled to dismissal of Plaintiff's claims and will briefly address the most definitive reasons below.

**A.    A.R.S. § 12-821.01.**

A.R.S. § 12-821.01 requires that "[p]ersons who have claims against a public entity or a public employee shall file claims with the person or persons authorized to accept service for the public entity or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues." A.R.S. § 12-821.01(A). The statute further provides that "[a]ny claim that is not filed within one

hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon." *Id.* Arizona courts have held that "[w]hen a person asserts claims against a public entity and public employee, the person 'must give notice of the claim to *both* the employee individually and to his employer.'" *Harris v. Cochise Health Sys.*, 160 P.3d 223, 230 (Ariz. App. 2007) (quoting *Crum v. Superior Court,* 922 P.2d 316, 317 (Ariz. App.1996)) (emphasis in original). This requirement is a "mandatory" and "essential" prerequisite to bringing any claim. *Salerno v. Espinoza*, 115 P.3d 626, 628 (Ariz. App. 2005). Neither actual notice nor substantial compliance excuses a failure to comply with the notice requirement in § 12-821.01(A). *Falcon ex rel. Sandoval v. Maricopa Cnty.*, 144 P.3d 1254, 1256 (Ariz. 2006).

Plaintiff does not deny that she failed to serve a notice on any County Defendant or person authorized to accept service for them within 180 days of the events at issue. She argues instead that she communicated her demands to have the felony drug charges against her dismissed to her public defender, and he discussed Plaintiff's claims with each of the county prosecutors and forwarded all documentation to them, including the notice Plaintiff sent to the City of Scottsdale. Doc. 16 at 2. Plaintiff argues that the communications of her public defender who is employed by Maricopa County should satisfy the notice requirements. *Id.* In light of the emphatic language of the statute stating that "any claim" that is not properly noticed under that statute is barred and "no action may be maintained thereon" (Ariz. Rev. S. § 12-821.01(A)), and Arizona case law stating that compliance is "mandatory" and "essential" and that neither actual notice nor substantial compliance are an adequate substitute to proper service, the Court finds Plaintiff's arguments unpersuasive.

### B. Prosecutorial Immunity.

Even if the Court were to find that Plaintiff had satisfied the notice requirements under A.R.S. § 12-821.01, the prosecutors are entitled to absolute immunity for their actions related to the filing and pursuit of felony drug charges against Plaintiff. The United States Supreme Court clearly stated in *Imbler v. Pachtman*, 424 U.S. 409, 431

(1976), that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from civil suit for damages under § 1983."

Plaintiff argues that Prosecutors Pitts, Reed, and Metz were not acting in their quasi-judicial capacities when they filed and continued to prosecute claims they knew were meritless. Doc. 16 at 7. Plaintiff cites to *Marrero v. City of Hialeah*, 625 F.2d 499, 506 (5th Cir. 1980), which found that a prosecutor's alleged participation in an unlawful search and seizure and his allegedly slanderous out-of-court statements to the media did not fall within *Imbler*'s umbrella of prosecutorial immunity. *Id.* at 506. Unlike *Marrero*, however, the activities Plaintiff complains of here are the very functions of "deciding which suits to bring" and "conducting them in court" that *Imbler* recognized as requiring absolute immunity. 424 U.S. at 424; *see Marrero*, 625 F.2d at 505-506. The court held that immunity is necessary to preserve "the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Imbler*, 424 U.S. at 427-28. The Court concludes that absolute immunity bars Plaintiff's claims against the individual Deputy County Attorneys. This finding also forecloses any potential *respondeat superior* claims.

Plaintiff's claims against the County Defendants are barred by failure to comply with the notice of claim statute and absolute immunity. The Court will dismiss the claims with prejudice.

**V.     State Defendant's Motion to Dismiss.**

Plaintiff makes the same three claims against State Defendant as she makes against County Defendants. As discussed above, these claims all rest on allegations that Maricopa County prosecutors filed and pursued false felony drug charges against Plaintiff. Doc. 1, ¶¶ 97, 103, 110.

As previously noted, Plaintiff did not file a response to State Defendant's motion to dismiss. The Court advised Plaintiff on February 13, 2013, that if she did not file a response by March 1, 2013, the Court would summarily dismiss her complaint. Doc. 15. Because Plaintiff failed to comply with this order, the Court will grant State Defendant's

motion and summarily dismiss Plaintiff's claims.  Even if the Court did not summarily dismiss these claims, the Court finds sufficient grounds for dismissal for the reasons put forth in the State's motion.

**IT IS ORDERED:**

1. City Defendants' motion to dismiss (Doc. 14) is **granted in part** and **denied in part** as set forth in this order, and counts II-XI against City Defendants are **dismissed with prejudice**.

2. County Defendants' motion to dismiss (Doc. 9) **is granted**, and counts VIII-X against these Defendants are **dismissed with prejudice**.

3. State Defendant's motion to dismiss (Doc. 10) **is granted**, and counts VIII-X against this Defendant are **dismissed with prejudice.**

Dated this 1st day of April, 2013.

_____
David G. Campbell
United States District Judge